**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ELIZABETH M. RUMPF | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 09-557 |
| METROPOLITAN LIFE INSURANCE CO., | : | |
| et al. | : | |

**<u>MEMORANDUM</u>**

**Baylson, J.**                                                            **July 23, 2010**

The central issue presented is the timeliness of Plaintiff's suit for ERISA benefits.

Presently before the Court is the Motion for Summary Judgment filed by Defendants

Metropolitan Life Insurance Company ("MetLife"), Constellation Energy Group Inc. f.k.a.

Baltimore Gas and Electric Company ("CEG"), and Constellation Energy Group Employee

Benefits Plans. (Doc. 24). Plaintiff Elizabeth M. Rumpf was an employee of CEG and alleges

violations of §§ 502(a)(1)(B), 502(a)(3), and 502(c) of the Employee Retirement Income Security

Act of 1974 (ERISA), 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3), and 1132(c), arising out of

Defendants' denial of her claim for long-term disability benefits. For the reasons that follow, the

Court will grant Defendants' Motion in part and deny it in part.

## I.      <u>Facts and Procedural History</u>

Plaintiff was an employee of CEG from January 17, 1981 through February 1, 2004.

During this period, CEG provided its employees with long-term disability benefits through a

Disability Insurance Plan ("the Plan") of which Plaintiff was a participant. The Plan was insured

through a group disability policy issued by MetLife to CEG ("the Policy"). MetLife was the

Claims Administrator for the Plan, and the Director of Benefits for CEG served as Plan Administrator. (Doc. 24 Ex. O, at 3). As noted, the present case arises from a claim made by Plaintiff for long-term disability benefits under the Plan.

Because of some confusion in the briefing and attachments to the briefs on the present Motion, the Court determined that it would be appropriate to allow the parties to offer evidence at a hearing prior to oral argument. Therefore, at the hearing which took place on July 19, 2010, Plaintiff testified concerning her claim for disability benefits and identified certain documents which she had received and denied any knowledge of other documents. Defense counsel cross-examined Plaintiff and also identified certain documents.

### A. Relevant Policy and Plan Documents

Central to plaintiff's claim for benefits, and to the Motion before the Court, are three documents pertaining to the Policy and the Plan. First is the Certificate of Insurance, which, as Defendants explain, represents the "group policy of insurance that funds the benefits provided by [CEG] under the [Plan]." (Doc. 24 Ex. O, at 13). The parties do not dispute that, prior to the commencement of this litigation, Plaintiff had not received a copy of the Certificate of Insurance. According to Defendants, this document "is distributed by [CEG] to its employees upon request," and neither "plaintiff [n]or her attorneys []ever made any request to the Plan Administrator . . . for a copy of the Certificate of Insurance." (Doc. 24 Ex. O, at 8–9). As is relevant to the present Motion, the Certificate of Insurance contains the following language:

### E. Time Limits on Starting Lawsuits
No lawsuit may be started to obtain benefits until 60 days after proof [of the claim] is given.
No lawsuit may be started more than 3 years after the time proof must be given.

(Doc. 14 Ex. A, at 27).[1]

Second is the Plan itself, which incorporates the policy by reference and provides that

"[i]f the terms of the Policy and this Plan are inconsistent, the terms of the Policy shall govern."

(Doc. 31 Ex. 8, at 1, 2).  Article 5 of the Plan details the procedures surrounding denials of

claims for benefits and appeals of those denials.   It makes clear that

> [t]he procedure for review of claims outlined in this Article 5 is the exclusive method available for resolving any claims under the Plan, notwithstanding the existence of other Employer procedures applicable to Employee grievances in other areas.  No Employee or beneficiary is entitled to bring any action, whether at law or in equity against any Employer or their respective agents, officers or Employees, including the Plan Administrator, or his/her designees, in connection with any right, privilege or benefit provided under this Plan unless and until, as a condition precedent, all the remedies provided under this Article 5 have been exhausted.

 (Doc. 31 Ex. 8, at 8).  The Plan does not contain any reference to the limitations period set forth

in the Certificate of Insurance.

Third is the SPD, which summarizes the terms of the Plan and provides guidance to Plan

---

[1]The Certificate further states that "[w]ritten proof of a claim must be given to [MetLife] not later than 90 days following the end of the Elimination Period," and provides a definition of the Elimination Period.  (Doc. 14 Ex. A, at 27, 13).

In their Motion, Defendants produce and rely upon a copy of the Certificate of Insurance containing a similar limitations period, which reads as follows:

> **Time Limit on Legal Actions.**  A legal action on a claim may only be brought against [MetLife] during a certain period.  This period begins 60 days after the date Proof is filed and ends 3 years after the date such Proof is required.

(Doc. 24 Ex. B, at 47).  Defendants state, however, that "[t]he Certificate of Insurance effective September 1, 1997"—which Defendants produced during briefing on a prior motion and which is quoted in the main text above—"was the Certificate of Insurance in effect when Plaintiff submitted a claim for long term disability coverage."  (Doc. 24 Ex. O, at 9).  While the distinction between the documents is not material to the disposition of the present Motion, it is unclear to the Court which version of the Certificate of Insurance Defendants believe would govern Plaintiff's claim for benefits.

participants on various issues and questions regarding the Plan, including how to file a claim for benefits. The SPD relevant to the present case became effective in January 2000. Defendant has produced a copy of this SPD, which contains 22 pages marked at the bottom as "Disability" and then 14 pages marked as "Admin." (Defs.' Ex. 3). Plaintiff contends that she did not receive this copy of the SPD, but only received a shortened version of it containing the "Disability" pages. Based on the testimony of Plaintiff, whom the Court found to be credible, the Court finds as a fact that the only document which Plaintiff received during the relevant time period is this shortened version of the SPD. Despite Defendants' cross-examination, the Court concludes that Plaintiff did not receive a longer version of the SPD containing the "Admin" pages.

The shortened version of the SPD, of which Plaintiff had a copy, does not have any reference or content concerning what would happen if a disability claim were denied. There is no mention of a right or requirement of an internal appellate review, a right to file a suit in court, or any limitations period for filing suit.

The "Admin" section, which Plaintiff did not receive, contains provisions that "[i]f you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in state or federal court," and then explains the process for appealing the denial of a claim for benefits. (Defs.' Ex. 3, admin-6 to -7). Consistent with the Plan, this portion of the SPD states "[y]ou have the right to seek an appeal of your denied claim" and that "[y]ou must follow these procedures before you take any legal action related to your claim." (Defs.' Ex. 3, admin-7). The "Admin" portion has no reference to any limitations period for taking such legal action, nor does it mention the Certificate of Insurance.

**B.**     **Plaintiff's Claim for Long-Term Disability Benefits**

On February 2, 2004, Plaintiff ceased working at CEG due to a diagnosis of major depression and anxiety. By letter dated May 10, 2004, CEG informed Plaintiff she may qualify for disability benefits under the Plan. (Doc. 24 Ex. C). Plaintiff filed her proof of claim for long-term disability benefits under the Plan on May 13, 2004. On May 14, CEG sent Plaintiff material related to her claim; the parties agree that this material included a copy of the SPD. Plaintiff claims that she did not receive any documents other than the shortened version of the SPD; as noted, the Court finds Plaintiff credible as to this point.

MetLife denied Plaintiff's claim for benefits on July 30, 2004 because Plaintiff did not meet the Plan's definition of "disabled." (Doc. 24 Ex. E). MetLife's letter stated that, "[b]ecause your claim was denied in whole or in part, you may appeal this decision by sending a written request for appeal to MetLife Disability," and then provided information on the appeal process. The letter also specified that, "[i]n the event your appeal is denied in whole or in part, you will have the right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974."

Plaintiff appealed the denial of her claim by letter dated January 13, 2005. (Doc. 24 Ex. H). On February 16, 2005, MetLife upheld the denial. (Doc. 24 Ex. I). The letter stated, inter alia, that Plaintiff "has the right to bring civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974," and that she "has exhausted her administrative remedies under the plan, and no further appeals will be considered."

Subsequently, Plaintiff and her counsel made multiple requests from MetLife for documents relating to her claim, such as copies of all Plan documents and of the contents of her claim file. Through these requests, Plaintiff or her counsel received, inter alia, copies of the SPD

and Plan, but not of the Certificate of Insurance.  Plaintiff's counsel made one request for documents from CEG, on November 14, 2008; this request was for "a copy of the [SPD] that was in effect in January and February of 2004."  (Doc. 24 Ex. L).  In response, CEG provided copies of the full version of the SPD and of the Plan.

Plaintiff subsequently brought suit in this Court against Defendants, filing a Complaint on February 9, 2009 (Doc. 1), and a First Amended Complaint ("the Complaint") on February 13, 2009 (Doc. 2).  Plaintiff alleged Defendants violated §§ 502(a)(1)(B) and 502(a)(3) of ERISA in their handling of her claim for benefits, and sought declaratory, injunctive, and monetary relief for these violations.  Plaintiff's allegations raise three general claims: unlawful denial of benefits, breach of fiduciary duty, and failure to provide documents.[2]  Per stipulation (Doc. 5), on May 21, 2009, Defendants filed their Answer with Affirmative Defenses to the First Amended Complaint (Doc. 6).  On June 24, 2009, Defendants filed a Motion for Judgment on the Pleadings (Doc. 11), which the Court, after hearing argument, denied (Doc. 21).  Following discovery, Defendants filed the present Motion for Summary Judgment on March 22, 2010.  Per stipulation, Plaintiff filed her Response on May 7, 2010 (Doc. 31), and Defendants their Reply on May 24, 2010 (Doc. 33).  As noted, the Court received evidence and heard argument on the Motion on July 19, 2010.

## II.   <u>Jurisdiction</u>

---

[2]Plaintiff alleged six causes of action in the Complaint: 1) Unlawful Termination of LTD Benefits; 2) Breach of Fiduciary Duty; 3) Estoppel from Seeking SSD Offset; 4) De Novo Standard of Review; 5) Specific Breach of Fiduciary Duty Allegations; and 6) Statutory Penalty for Failure to Provide Documents.  The parties agree that the first, third, and fourth causes of action pertain to plaintiff's allegation of wrongful denial of benefits, and the second and fifth causes of action both allege breach of fiduciary duty.

The Court has jurisdiction under 29 U.S.C. § 1132(e) & (f), and 28 U.S.C. § 1331.

## III.    The Parties' Contentions

### A.    Defendants' Contentions

Defendants seek summary judgment with respect to all of Plaintiff's claims.  According to Defendants, Plaintiff's denial-of-benefits claim is barred by the three-year contractual limitations period set forth in the Certificate of Insurance.  Defendants assert that this limitations period began to run on July 11, 2004, sixty days after Plaintiff's proof of disability was filed, and thus expired well before the filing of the present suit on February 9, 2008.  Defendants note that, even if the limitations period did not commence until July 30, 2004, when Plaintiff's claim for benefits was first denied, or February 16, 2005, when MetLife upheld this denial on appeal, Plaintiff's challenge would still be untimely.  Defendants further contend that, even absent this contractual limitations period, plaintiff's denial-of-benefits claim would be barred by Pennsylvania's four-year limitations period for breach-of-contract claims, which would otherwise govern Plaintiff's claim.  According to Defendants, this limitations period would have commenced on July 30, 2004, when Plaintiff's claim for benefits was first denied.

Defendants next contend that Plaintiff's breach-of-fiduciary-duty claim is barred by the three-year statutory limitations period set forth in 29 U.S.C. § 1113 for such claims.  According to Defendants, this limitations period began to run no later than February 16, 2005, when MetLife's denial of benefits became final and Plaintiff was notified of that determination.  Alternatively, Defendants note that this claim is based on the same facts as Plaintiff's denial-of-benefits claim, and therefore Plaintiff is precluded from raising it.

Lastly, Defendants contend that Plaintiff cannot sustain a cause of action under 29 U.S.C.

§ 1132(c) against either CEG or MetLife for any purported failure to produce documents, because 1) MetLife was the Claims Administrator for the Plan and § 1132(c) only provides a cause of action against plan administrators; 2) at the time of her request from CEG, the contractual three-year limitations period had expired, and thus she did not have a colorable claim to benefits under the Plan; and 3) CEG complied with Plaintiff's request, even though it was not obligated to do so.

###    B.    Plaintiff's Contentions

Plaintiff responds that the three-year contractual limitations period relied upon by Defendants does not govern her denial-of-benefits claim because it was not included in either the SPD or the Plan. Instead, Plaintiff contends that her denial-of-benefits claim is governed Pennsylvania's four-year limitations period for breach-of-contract claims. According to Plaintiff, this period did not commence until February 16, 2005, when she had exhausted her administrative remedies as the SPD and the Plan require before bringing suit in federal court. As such, the denial-of-benefits claim is not time barred. Plaintiff does not offer response to Defendants' contentions regarding her claims for breach of fiduciary duty or for failure to produce documents.

## IV.    Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is

"material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving party has met its initial burden, the adverse party's response must, "by affidavits or as otherwise provided in this rule [ ] set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson, 477 U.S. at 255.

## V.     Discussion

### A.     Denial of Benefits

#### 1.     Statute of Limitations

As noted, Defendants contend that Plaintiff's claim for wrongful denial of benefits is barred by a three-year limitations period contained in the Certificate of Insurance.  ERISA does not provide a statutory limitations period for non-fiduciary claims such as this.  Instead, "the applicable statute of limitations [for such claims] is that of the forum state claim most analogous to the ERISA claim at hand."  Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 520 n.2 (3d Cir.

2007) (internal quotation marks omitted). The parties agree that, absent the three-year limitations period set forth in the Certificate of Insurance, Plaintiff's claim for denial of benefits under § 1132(a)(1)(B) is governed by Pennsylvania's four-year limitations period for breach-of-contract actions. See Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 305–06 (3d Cir. 2008). "The parties are allowed to contract for a shorter limitation period, so long as the contractual period is not manifestly unreasonable." Id. at 306.

Plaintiff does not challenge the reasonableness of the Certificate of Insurance's three-year limitations period; she disputes, however, whether this limitations period governs her denial-of-benefits claim. According to Plaintiff, the three-year limitations period is unenforceable as to her claim because neither it, nor any reference to it or to the Certificate of Insurance, appears in the SPD or in any other communication she had with Defendants regarding her claim. Furthermore, Plaintiff notes that she did not receive a copy of the Certificate of Insurance from Defendants until after she filed the instant suit.

### 2. The Certificate of Insurance's Three-Year Limitations Period Does Not Apply

The Third Circuit has made clear that "where an SPD in effect when the plaintiff['s] benefits vest . . . clearly contradicts the plan, the terms of the SPD can be held to control for purposes of a claim for plan benefits pursuant to ERISA section 502(a)(1)(B)." Hooven v. Exxon Mobil Corp., 465 F.3d 566, 577 (3d Cir. 2006) (emphasis omitted); see Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Research Found., 334 F.3d 365, 378 (3d Cir. 2003). The Third Circuit has further recognized that an SPD's silence as to a particular term contained in a plan can, in some circumstances, constitute such a clear contradiction. As one

district court has summarized,

> [I]t is clear that the mere <u>absence</u> of terms in the SPD does not necessarily create a conflict. To equate silence with conflict would reduce any pension plan to the specific terms contained in the summary plan description—an absurd result since by its own definition the summary plan description is meant to <u>summarize</u>, not recite, the detailed pension plan. <u>See</u> <u>Charter Canyon Treatment Ctr. v. Pool Co.</u>, 153 F.3d 1132, 1136 (10th Cir. 1998); <u>Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan</u>, 144 F.3d 1014, 1023 (7th Cir. 1998). <u>See generally</u> <u>Burstein</u>, 334 F.3d at 379 ("it would defeat the purpose of having a summary of a full plan document if the SPD were to parrot all the terms of the plan document"). Equally clear is that where the SPD is silent regarding additional requirements materially affecting the rights or obligations of a plan participant, such silence may essentially contradict or conflict with the terms of a plan. <u>See</u> <u>Burstein</u>, 334 F.3d at 379 (where the summary plan description gave an impression that the pension plan would automatically vest upon the plan's termination, and the language of the plan imposed a significant qualification on a participant's vesting rights, a conflict was found).

<u>Nash v. Mercedes Benz USA</u>, 489 F. Supp. 2d 411, 416 (D.N.J. 2007) (Martini, J.).

In the present case, it is undisputed that the SPD governing Plaintiff's claim—be it the full or shortened version—contains neither the three-year limitations period set forth in the Certificate of Insurance nor any reference to the period or to the Certificate of Insurance, and that Plaintiff did not receive a copy of the Certificate of Insurance until after she filed the instant suit. As the Third Circuit has noted, "[t]he SPD is the document to which the lay employee is likely to refer in obtaining information about the plan and in making decisions affected by the terms of the plan." <u>Burstein</u>, 334 F.3d at 379. "Thus, ERISA requires, in no uncertain terms, that the summary plan description be accurate and sufficiently comprehensive to reasonably apprise plan participants of their rights and obligations under the plan." <u>Id.</u> (internal quotation marks omitted). In particular, an SPD is required by law to specify "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits," 29 U.S.C. § 1022(b), and "[t]he procedures governing claims for benefits . . . , applicable time limits, and remedies available

under the plan for the redress of claims which are denied in whole or in part," 29 C.F.R. §

2520.102-3(s). The parties have not identified, and the Court is not aware of, any Third Circuit

cases addressing whether a contractual limitations period is enforceable as to a denial-of-benefits

claim when, as is the case here, that period shortens the otherwise applicable state-law limitations

period and is not mentioned in the relevant SPD. Other courts that have confronted the issue,

however, have determined that such a limitations period is unenforceable because it "'qualifies as

a "circumstance which may result in disqualification, ineligibility, or denial or loss of benefits"

that should [be] disclosed to plaintiff[ ] via the SPD,'" and "'[a]bsent such a provision, the SPD .

. . ha[s] the effect of failing to inform" plaintiff[ ] of a key limitation on the[ ] right to recover

benefits under the Plan.'" Robilotta v. Fleet Boston Fin. Corp. Group Disability Income Plan,

Civ. A. No. 05-5284, 2008 WL 905883, at *10 (E.D.N.Y. Mar 31, 2008) (Hurley, J.) (some

alterations in original) (quoting Manginaro v. Welfare Fund of Local 771, 21 F. Supp. 2d 284,

293–94 (S.D.N.Y.1998) (citations and brackets omitted)); see also, e.g., Richards v. Johnson &

Johnson, 688 F. Supp. 2d 754, 779–80 (E.D. Tenn. 2010) (Lee, M.J., adopted by Mattice, J.);

Shore v. PaineWebber Long Term Disability Plan, Civ. A. No. 04-4152, 2007 WL 3047113, at *

9 (S.D.N.Y. Oct. 15, 2007) (Karas, J.). The Court finds this line of reasoning persuasive, and

likewise concludes that the Certificate of Insurance's three-year limitations period does not

control Plaintiff's denial-of-benefits claim in this case. Thus, the Court holds that Plaintiff's

claim is governed by Pennsylvania's four-year period for breach-of-contract actions.

**3.    The Accrual Date for Plaintiff's Denial-of-Benefits Claim
          is February 16, 2005**

Defendants contend that, even under the four-year limitations period, Plaintiff's claim is

time barred because it accrued when MetLife first denied her claim for benefits, which occurred more than four years before Plaintiff filed the instant suit. Plaintiff, meanwhile, argues that her claim did not accrue until she exhausted the administrative appeals process, which is required before she is eligible to bring her claim in federal court; marked from this date, her claim is timely under the four-year period.

Though the four-year limitations period derives from state law, "the accrual date for federal claims is governed by federal law, irrespective of the source of the limitations period":

> To determine the accrual date of a federal claim, we utilize the federal "discovery rule" when there is no controlling federal statute. Under this rule, a statute of limitations begins to run when a plaintiff discovers or should have discovered the injury that forms the basis of his claim.
>     In the ERISA context, the discovery rule has been developed into the more specific "clear repudiation" rule whereby a non-fiduciary cause of action accrues when a claim for benefits has been denied. Notably, a formal denial is not required if there has already been a repudiation of the benefits by the fiduciary which was clear and made known the beneficiary.

Miller, 475 F.3d at 520–21 (internal quotation marks and citations omitted). "The key inquiry is whether the plan participant had 'reasonable discovery of the actionable harm.'" Grasselino v. First Unum Life Ins. Co., Civ. A. No. 08-635, 2008 WL 5416403, at *4 (D.N.J. Dec. 22, 2008) (Cavanaugh, J.) (quoting Miller, 475 F.3d at 522). Accordingly, under Miller, the accrual date for plaintiff's denial-of-benefits claim will depend on when her claim for denial of benefits can be considered "clearly repudiated."

As noted, Plaintiff's claim for benefits was initially denied on July 30, 2004; this denial was upheld on appeal on February 16, 2005, which marked the completion of the administrative appeals process required under the Plan. With respect to claims seeking to enforce the payment of benefits, it is well settled that "[u]nder ERISA, internal administrative remedies as outlined in

the plan at issue must be exhausted prior to bringing suit in federal court." Wolfe v. Lu, Civ. A. No. 06-79, 2007 WL 1007181, at *5 & n.2 (W.D. Pa. Mar. 30, 2007) (McLaughlin, J.); see, e.g., Gregorovich v. E.I. du Pont de Nemours, 602 F. Supp. 2d 511, 519 (D. Del. 2009) (Robinson, J.) (citing cases and noting that "an ERISA plan participant must exhaust the administrative remedies available under the plan before seeking relief in federal court unless the participant can demonstrate that resort to the plan remedies would be futile").

The Third Circuit has not directly held whether a claim for benefits can be considered to have been "clearly repudiated" before an individual has completed the requisite exhaustion of administrative remedies. See Sadowski v. Unum Life Ins. Co. of Am., Civ. A. No. 08-0980, 2008 WL 3307142, at *3 (E.D. Pa. Aug. 11, 2008) (Sanchez, J.) (noting that Third Circuit caselaw "does not clarify whether a formal denial [of a claim for benefits] results from an initial denial or a denial on appeal"). Caselaw within the Third Circuit, however, suggests that exhaustion of administrative remedies, though required before a plaintiff can bring a claim for denial of benefits in federal court, may not likewise be required before such a claim can accrue. See, e.g., Klimowicz v. Unum Life Ins. Co. of Am., 296 F. App'x 248, 251 (3d Cir. 2008) (nonprecedential) (finding the plaintiff's claim accrued either at the time specified by the plan's contractual limitations period or at the time when the plaintiff was first notified that his benefits would be limited to 24 months, despite the plaintiff's subsequent administrative appeals); Gregorovich, 602 F. Supp. 2d at 517 (applying Miller and concluding that "plaintiff's cause of action for improper calculation of his benefits accrued upon his initial receipt of the erroneously calculated award[,] . . . not . . . the denial date of the second level appeal"); Grasselino, 2008 WL 5416403, at *4–5 (finding the plaintiff's claim accrued at either the date of initial denial of

14

benefits or the date of a subsequent approval of limited benefits, neither of which reflected the administrative appeal pursued by the plaintiff in between); cf. Burke v. PriceWaterhouseCoopers LLP Long Term Disability Plan, 572 F.3d 76, 81 (2d Cir. 2009) (finding a plan's limitations period enforceable even though it began to run before exhaustion of administrative remedies could occur, thus "join[ing] the Fifth, Sixth, Seventh, and Eighth Circuits in upholding written plan terms including limitations periods which may begin to run before a claimant can bring legal action"); Gassiott v. Prudential Ins. Co. of Am., Civ. A. No. 08-7358, 2009 WL 3188428, at *4–5 (S.D.N.Y. Oct. 6, 2009) (Keenan, J.) (applying Burke). Furthermore, as noted in Miller, "clear repudiation" does not require a formal denial of a claim, but only an event, such as the receipt of an underpayment of benefits, that "clearly alert[s] the plaintiff that his entitlement to benefits has been repudiated." 475 F.3d at 521.

In this case, however, the Court concludes it would be unfair and inequitable to hold Plaintiff to any disadvantage because she followed the instructions in the letter she received, dated July 30, 2004, denying her benefits. Consistent with the Plan, this letter specifically noted that Plaintiff could appeal, and stated that "[i]n the event [her] appeal is denied in whole or in part," she would then have the right to bring a civil action; in turn, Plaintiff justifiably filed the internal appeal on January 13, 2005, which was denied on February 16, 2005. Plaintiff, meanwhile, received no document mentioning any limitations period or any specific timetable within which she must file her lawsuit.

In light of these circumstances, the Court believes it would be a miscarriage of justice to find that the accrual date started any earlier than February 16, 2005, and therefore, the Court concludes this suit was timely filed within the applicable four-year statute of limitations. The

Court recognizes that some judges in adjudicating ERISA disputes have used the initial denial of benefits as the accrual date, without regard to policy provisions or other equitable considerations; however, the Court declines to follow those cases.[3]

## B.    Breach of Fiduciary Duty

Plaintiff claims that the denial of her claim for benefits was not only wrongful, but also constituted a breach of fiduciary duty.  Defendants raise two grounds for summary judgment with respect to this claim: 1) it is barred by the three-year statutory limitations period set forth in 29 U.S.C. § 1113(2); and 2) it is precluded by Plaintiff's simultaneous claim for wrongful denial of benefits, which is premised on the same facts as her breach-of-fiduciary-duty claim.

29 U.S.C. § 1113 provides that

[n]o action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of–

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

---

[3]The Court notes that in <u>Gregorovich</u>, Judge Robinson applied the doctrine of "equitable tolling" to the period of time during which the plaintiff in that case had exhausted her administrative remedies.  602 F. Supp. 2d at 518–20.  In this case, even though Plaintiff has not argued for equitable tolling, the Court believes that it would be appropriate because Plaintiff justifiably relied on the communications from Defendants in filing her administrative appeal, which resulted in some delay in filing this case.  Considering the final denial of Plaintiff's appeal as February 16, 2005, she filed this Complaint less than four years thereafter, and thus the suit is timely.

Under § 1113(2), "actual knowledge" exists when a plaintiff has knowledge of "all material facts necessary to understand that some claim exists." Montrose Med. Group v. Bulgar, 243 F.3d 773, 787 (3d Cir. 2001) (quoting Gluck v. Unisys Corp., 960 F.2d 1168, 1177 (3d Cir. 1992)). This "does not mean that the statute of limitations can never begin to run until a plaintiff first consults with a lawyer," id. (quoting Gluck, 960 F.2d at 1177), nor does actual knowledge require that "the plaintiff be legally trained and have developed an expertise in ERISA law such that she would subjectively appreciate the accrual of a breach of fiduciary duty cause of action," Koert v. GE Group Life Assurance Co., 416 F. Supp. 2d 319, 325 (E.D. Pa. 2005) (Stengel, J.), aff'd, 231 F. App'x 117 (3d Cir. 2007). It does, however, "require[] a showing that plaintiff[] actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim for breach of fiduciary duty or violation under ERISA." Montrose, 243 F.3d at 787 (emphasis omitted) (quoting Int'l Union of Elec., Elec. Salaried, Mach. & Furniture Workers v. Murata Erie N. Am., 980 F.2d 889, 900 (3d Cir. 1992)).

According to Defendants, Plaintiff gained actual knowledge of the alleged breach of fiduciary duty when MetLife denied Plaintiff's claim for benefits, and thus § 1113(2)'s three-year statute of limitations began running either when MetLife initially denied plaintiff's claim or when that determination was upheld on appeal. Defendants point to Koert in support of this proposition, in which the plaintiff alleged breach of fiduciary duty based on the wrongful denial of her claim and the manner in which she was notified of the denial. In concluding this claim was time barred, the district court found that "[a]lthough the Third Circuit interprets the actual knowledge requirement for breach of fiduciary duties claims stringently, no cases support Koert's claim that a complete cessation of previously on-going benefits does not give the recipient actual

knowledge of a breach in fiduciary duties," and that "[i]t is enough that she was aware her benefits stopped, that she had knowledge that the defendant was cutting off her benefits, that she was told why and that she involved counsel to advise her." Koert, 416 F. Supp. 2d at 325 (footnote omitted). In affirming the district court's determination, a panel of the Third Circuit explained,

> We readily conclude that Koert became aware of the[] facts [underlying her breach-of-fiduciary-duty claim] at the time she was notified that her claim had been denied. When a fiduciary makes an outright repudiation of its obligation to pay its beneficiary, . . . it is reasonable to expect that the statute of limitations began to run at that point.

Koert v. GE Group Life Assurance Co., 231 F. App'x 117, 121 (3d Cir. 2007) (nonprecedential) (internal quotation marks omitted).

Unlike her denial-of-benefits claim, the Court need not determine here whether Plaintiff had "actual knowledge" when she received the initial denial of her claim from MetLife or when she received the denial of her appeal; based on either accrual date, Plaintiff's claim would be time barred, so long as plaintiff had "actual knowledge" as of either of the dates. MetLife's letters to Plaintiff regarding her claim accomplished this: they explained that her claim and appeal have been denied, provided the reasons for the denial, and informed her that the denial may give rise to an ERISA claim. Furthermore, Plaintiff, like the plaintiff in Koert, had counsel assisting her on her appeal of MetLife's initial denial. Thus, certainly by the time Plaintiff was notified of MetLife's denial of her appeal, Plaintiff "actually knew not only of the events that occurred which constitute[d] the breach or violation, but also that those events supported a claim for breach of fiduciary duty or violation under ERISA." Montrose, 243 F.3d at 787. Accordingly, the Court finds that Plaintiff's breach-of-fiduciary-duty claim is untimely under §

1113(2).[4]

## C.    **Failure to Produce Documents**

Lastly, Plaintiff alleges that Defendants MetLife and CEG are subject to statutory

penalties for failing to produce Plan documents at her request.  Defendants seek summary

judgment as to this claim because 1) MetLife, as Claims Administrator of the Plan, cannot be

held liable for any such statutory penalties; 2) Plaintiff did not have a colorable claim for benefits

that the time of her request from CEG, and thus CEG had no obligation to produce documents at

her request; and 3) regardless of any obligation, CEG complied with Plaintiff's request.

Plaintiff's cause of action for failure to produce documents arises under 29 U.S.C. §

1132(c).  As one district court has recently summarized,

> Section 104(b)(4) of ERISA provides that an "administrator shall, upon written
> request of any participant or beneficiary, furnish a copy of the latest updated summary[ ]
> plan description, and the latest annual report, any terminal report, the bargaining
> agreement, trust agreement, contract or other instruments under which the plan is
> established or operated."  § 1024(b)(4).  A breach of this provision is actionable under §
> 502(c)(1), which after 30 days permits a participant or beneficiary to recover a statutory
> penalty for each day the requested information is not provided.  § 1132(c)(1).  The
> purpose behind § 502(c)(1) is to "induce plan administrators to comply with ERISA's
> disclosure provisions, and not to make a participant whole."  Maiuro v. Federal Express
> Corp., 843 F. Supp. 935, 943 (D.N.J. 1994) (citing Groves v. Modified Retirement Plan
> for Hourly Paid Employees of the Johns Mansville Corp., 803 F.2d 109, 117 (3d Cir.
> 1986)).
> Section 502(c)(1) is a penal statute and as such is "narrowly construed."  Groves,
> 803 F.2d at 118.  This means that the terms of the statute are strictly defined, see
> Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan, 24 F.3d 1491,
> 1505 (3d Cir. 1994), and a plaintiff seeking damages under the statue must show
> compliance with the "statutory prerequisites."  Porcellini v. Strassheim Printing Co., Inc.,
> 578 F. Supp. 605, 611 (E.D. Pa. 1983).  In this dispute, Plaintiffs must therefore show
> that there was "written request" for plan information, [the defendant] failed to comply

---

[4]In light of this determination, the Court need not reach Defendants' additional argument
that Plaintiff's breach-of-fiduciary-duty claim is precluded by her simultaneous claim for
wrongful denial of benefits.

with the request, and a monetary penalty is warranted.  See § 1132(c)(1).

Stallings ex rel. Estate of Stallings v. IBM Corp., Civ. A. No. 08-3121, 2009 WL 2905471, at

*11 (D.N.J. 2009) (Kugler, J.) (footnote omitted).  The court further noted that, in assessing

whether a monetary penalty is warranted, "the court may look for bad faith or intentional conduct

on the part of the administrator, the length of the delay, the number of requests made and

documents withheld, and the existence of any prejudice to the participant or beneficiary.

Prejudice to the participant or beneficiary is not required."  Id. at *13 (internal quotation marks

and citations omitted).

At oral argument, Plaintiff's counsel conceded that under applicable Third Circuit law

Plaintiff did not have any legally supported claim for relief for any purported failure to produce

documents. The Court agrees.  As to MetLife, Defendants correctly recognize that only plan

administrators may be held liable for the statutory penalties sought by Plaintiff here.  See

Kollman v. Hewitt Assocs., 487 F.3d 139, 144 (3d Cir. 2007); Levesque v. Kemper Nat'l Servs.,

Civ. A. No. 04-4143, 2006 WL 1686624, at *1 (E.D. Pa. June 14, 2006) (Sanchez, J.) (collecting

cases and concluding that "[o]nly plan administrators are liable for statutory penalties under §

1132(c)," and thus "[a]n insurance company, which is not a plan administrator, cannot be liable

for statutory damages for failure to comply with an information request").  It is undisputed that

MetLife is the Claims Administrator for the Plan, and CEG is the Plan Administrator.

Accordingly, MetLife cannot be held liable under § 1132(c) in this case for any purported failure

to produce documents.

As to CEG, Plaintiff, through a letter from her counsel dated November 14, 2008,

requested that it send her "a copy of the Summary Plan Document that was in effect in January

and February of 2004." (Doc. 24 Ex. L). It is undisputed that this was the only written request

for documents made by Plaintiff to CEG. It is also undisputed that CEG responded to this

request with a copy of the SPD as well as the Plan, and Plaintiff does not claim that this response

came more than thirty days after her request. As CEG provided Plaintiff with the document she

requested in a timely fashion, the Court sees no basis for holding CEG liable for statutory

penalties under § 1132(c).

**VI.** **Conclusion**

For the foregoing reasons, the Court will grant the Defendants' Motion for Summary

Judgment on the claims of breach of fiduciary duty and failure to produce documents, and will

deny Defendants' Motion as to the claim for payment of disability benefits. Plaintiff did not

move for summary judgment seeking recovery of benefits, and the Court will now give her the

opportunity to do so.

An appropriate Order follows.

O:\CIVIL 09-10\09-557 Rumpf v. Metropolitan\Rumpf v. Metropolitan - Memo MSJ.wpd